[No. B190552. Second Dist., Div. Four. Nov. 28, 2007.]

CITY OF LONG BEACH REDEVELOPMENT AGENCY, Plaintiff and Appellant, v.
LEWIS D. MORALES et al., Defendants and Respondents.

COUNSEL

Hahn & Hahn, Don Mike Anthony and Todd R. Moore for Plaintiff and Appellant.

Samuel Salmon for Defendants and Respondents.

OPINION

**EPSTEIN, P. J.**—The sole issue in this condemnation case is the entitlement of the condemnees to an award of litigation expenses under Code of Civil Procedure section 1250.410[1] based on a determination that the condemning agency's final offer was unreasonable. We conclude the trial court relied on incorrect and improper information in evaluating the reasonableness of the final offer by the condemning agency. We reverse the award of litigation expenses and remand for reconsideration.

## FACTUAL AND PROCEDURAL SUMMARY

The Redevelopment Agency of the City of Long Beach (Agency) filed a complaint in eminent domain on December 23, 2004, to acquire a parcel of land (the property) owned by Lewis D. and Nancy B. Morales. Scott Lidgard, the Agency's appraiser, valued the property at $1.65 million as of the date of the action.

In July 2005, Mr. Lidgard prepared his trial exchange appraisal. As of the established date of value, March 21, 2005, Mr. Lidgard valued the property at $1,952,000, based on a value of $32 per square foot and a lot size of 61,000 square feet. The Moraleses' appraiser, James Reid, valued the property at $3.4 million, based on a value of $55 per square foot and a lot size of 62,449 square feet. Given the disagreement about the size of the property, the Agency conducted a survey and determined that the true size of the property was 62,544 square feet. Mr. Lidgard amended his trial appraisal, multiplying $32 per square foot times the correct square footage (62,544 square feet), to reach the sum of $2,001,408, which he rounded down to $2 million.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

Trial was set for October 17, 2005. Under section 1250.410, at least 20 days before the date of the trial, the plaintiff is required to file and serve its final offer of compensation, and the defendant is required to file and serve its final demand for compensation.

The Agency's governing board met to formulate its final offer on September 12, 2005. The Agency decided not to offer the full amount of the Moraleses' appraisal, in part because it believed the sales upon which Mr. Reid relied were not comparable.

The Agency also decided not to rely upon Mr. Lidgard's final trial appraisal. This decision was based in part on Mr. Lidgard's treatment of a sale directly across the street from the Moraleses' property. This comparable property was sold in July 2004 for $25.91 per square foot. It was sold a second time, in March 2005 (within weeks of the valuation date for the Moraleses' property), for $42.68 per square foot. The Agency's attorney asked Mr. Lidgard why he valued the Moraleses' property at $32 per square foot when there had been a sale for $42.68 per square foot directly across the street at the date of valuation. Mr. Lidgard explained that the March 2005 seller had taken back a very large portion of the purchase price in the form of a promissory note, and he (Lidgard) had not been able to confirm that the sale was at arm's length, reflecting a true market transaction.

After consideration of Mr. Lidgard's explanation, the Agency's governing board nevertheless decided that the sale directly across the street at the date of value "was very significant and could not be ignored." The Agency authorized a final offer of $2.7 million for the land, which was based on $43.24 per square foot, slightly more than the price per square foot of the comparable sale across the street.[2] The Agency also offered $86,755 for fixtures and equipment. The offer was made on September 16, 2005, and provided that it would expire and be deemed revoked if not accepted by October 7, 2005, 10 days before trial.

The Moraleses made a demand of $3,565,000 for the property. The Moraleses agreed with the Agency's valuation of the fixtures and equipment at $86,755, and the parties entered into a stipulation to that effect. The October 17 trial date was continued to November 28, 2005. The Moraleses submitted a second final demand on November 8, 2005, seeking $3,486,755 for the property.

---

[2] If the $42.68 per square foot valuation had been used, the offer would have been $2,669,378. It appears the Agency decided to round up the offer to $2.7 million.

Neither offer was accepted, and the matter proceeded to trial. Mr. Lidgard testified for the Agency; Mr. Reid testified for the Moraleses. The jury determined that $3.45 million was just compensation for the taking of the property. The Moraleses then moved for the costs of litigation, pursuant to section 1250.410, subdivision (b), which provides: "If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses."

Applying section 1250.410, the court awarded the Moraleses their litigation expenses. The Agency appeals from that order.

## DISCUSSION

The Agency claims the trial court's determination that its offer was unreasonable is not supported by the evidence, and hence its award of litigation expenses was improper. "Section 1250.410 requires the court to evaluate the reasonableness of the plaintiff's offer in light of the award and the evidence adduced at trial. The trial court's determination of that issue is a resolution of a question of fact and will not be disturbed on appeal if supported by substantial evidence." (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 808 [214 Cal.Rptr. 904, 700 P.2d 794].)

■ Several factors should be considered in determining the reasonableness or unreasonableness of offers pursuant to section 1250.410, including the amount of the difference between the offer and the compensation awarded; the percentage of the difference between the offer and the award; and the good faith, care, and accuracy utilized in formulating the amount of the offer and of the demand. (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 720 [66 Cal.Rptr.2d 630, 941 P.2d 809].) "[T]he mathematical relation between the condemner's highest offer and the award is only one factor that should enter into the trial court's determination." (*Ibid.*)

The Agency correctly notes that the trial court adopted the Moraleses' incorrect calculation by including the agreed-upon compensation for fixtures

in the compensation award, while excluding that same figure in its consideration of the Agency's final offer.[3] The Agency's offer was $2.7 million for the land, and $86,755 for the fixtures and equipment, for a total of $2,786,755. The award to the Moraleses was $3.45 million for the land, and $86,755 for the fixtures and equipment, for a total of $3,536,755. The court subtracted the $2.7 million which was offered for the land from the total award of $3,536,755 for land and fixtures. This yielded a dollar difference of $836,755 between the award and the final offer. Using this figure, the court calculated that the final offer was 76.34 percent of the award. The court should have considered only the difference between the amount offered for the land and the award for the land, which was $750,000. Properly calculated, the final offer represented 78.26 percent of the award. Thus, in considering the mathematical reasonableness of the Agency's offer based on dollar amounts and on percentages, the court relied on incorrect figures.

■ A survey of cases conducted by the court in *People ex rel. Dept. of Transportation v. Yuki* (1995) 31 Cal.App.4th 1754, 1764 [37 Cal.Rptr.2d 616], revealed that "final offers which are 60 percent or less of the jury's verdict are found to be unreasonable while offers which are above 85 percent have been considered reasonable per se. [Fn. omitted.] Those in the middle range . . . can fall within either group, depending upon the other factors, particularly whether the government agency was unyielding and the extent of the 'good faith, care, and accuracy in the method of determination of offer and demand.' [Citations.]" Although the correct calculations indicate the Agency's offer was closer to the awarded compensation, this case still falls in the middle range for purposes of determining reasonableness.

The Moraleses argue that because the Agency's $2.7 million offer expired on October 7, 2005, and trial did not begin until December 2, 2005, during the 56-day period between expiration and trial, the Agency's final offer was actually zero. But at the time of the Agency's $2.7 million final offer, trial was set to commence on October 17, 2005. "The purpose of section 1250.410 is to encourage settlement of condemnation actions by providing incentives to a party who submits a reasonable settlement offer or demand before trial." (*People ex rel. Dept. of Transportation v. Yuki, supra*, 31 Cal.App.4th 1754, 1763.) The Agency's offer was open until 10 days before the scheduled trial date, at which point, trial preparation would be underway and the savings to either party which would ordinarily result from settlement would be greatly reduced. It was not until four days after the expiration of the offer that the trial was taken off calendar and later rescheduled. We are cited to no authority

---

[3] The Agency did not bring this error to the attention of the trial court.

which required the Agency to reinstate its offer, or to make a new offer. It met its statutory obligation under section 1250.410 with a final offer to pay $2.7 million, and that was the offer the court was to consider in ruling on the Moraleses' motion for litigation expenses.

We turn to the court's analysis of the remaining factor, the good faith, care and accuracy utilized by the Agency in formulating the amount of the offer. The court found that the Agency "relied on the appraisal prepared by Lidgard. Lidgard's initial appraisal value for the property was $915,000 based on the comparable sales approach using six real properties he considered comparable to defendants' property. . . . This previous appraisal was based on an inaccurate measure of the square footage of the property and Lidgard had used six real properties ranging in sale prices from $3.65 million to $51,500, with most of the properties being sold between $200,000 and $650,000."

The court also noted that in formulating his initial appraisal, Mr. Lidgard relied on a sale to the Long Beach Unified School District, which would not have been admissible at trial pursuant to Evidence Code section 822, subdivision (a)(1) because the acquisition was for a public use for which the property could have been taken by eminent domain.

The court continued: "The fact that plaintiff, after discovering that both parties' appraisers had been relying on an erroneous measurement of the square footage, retained a surveyor to measure the property to reach a proper appraisal and raised its offer accordingly does not diminish the fact that plaintiff relied on Lidgard's erroneous appraisal in formulating its final offer. Plaintiff points to the fact that despite Lidgard's modified trial appraisal of the property at a value of $2 million, plaintiff still took into account two sales of properties across the street from the subject property," and on that basis made a final offer of $2.7 million.

The court concluded: "On balance, given that (1) plaintiff's final offer was $836,755 less than the final judgment and thus substantially lower than the jury's verdict, (2) was 76.34 percent of the final judgment, (3) that plaintiff relied on Lidgard's appraisal which was not determined with care and accuracy, and (4) defendants' final offer was $50,000 less than the final judgment . . . the court is inclined to award defendants their litigation expenses pursuant to Code of Civil Procedure section 1250.410."

The Agency argues, and we agree, that the court's analysis of the Agency's care and accuracy in formulating its offer was based in large part on the

pretrial appraisals by Mr. Lidgard, not on the Agency's conduct. There is evidence to support the court's view that Mr. Lidgard's appraisals were flawed. Particularly problematic was his refusal to consider the second sale of the property directly across the street from the Moraleses' property, based in part on his inability to confirm that it was an arm's-length transaction. Mr. Lidgard's decision also was based on the fact that the seller partially financed the purchase and did not cash out, a circumstance he felt led to a higher sale price. Nothing was shown to undermine the legitimacy of that factor. And while Mr. Lidgard did not include the second sale in his valuation of the property, neither did Mr. Reid, defendants' appraiser, who said he would have included that sale in his comparables, but admitted he "completely missed it." In fact, at the hearing on the motion for costs, the trial court commented that "there is much to criticize about the bases for valuation offered by each of the experts . . . ."

In any event, this is not a case where the plaintiff stuck stubbornly to its own appraisal. (See *County of Los Angeles v. Kranz* (1977) 65 Cal.App.3d 656, 660 [135 Cal.Rptr. 473].) In opposition to the motion for costs, the Agency submitted the declaration of its counsel, Don Mike Anthony. According to Mr. Anthony, after the parties exchanged their trial appraisals, he noticed there was a disagreement as to the actual size of the property. He immediately had the Agency conduct a survey to determine the true size of the property, and had Mr. Lidgard adjust his trial appraisal to reflect the actual size of 62,544 square feet.

Mr. Anthony also had Mr. Lidgard investigate and personally inspect the comparable sales relied on by Mr. Reid. Mr. Lidgard reported that he did not believe the sales were comparable because of their distance from the property, and their superior neighborhoods.

Mr. Anthony asked Mr. Lidgard why he valued the subject property at $32 per square foot when the 16,400-square-foot property right across the street sold at $42.68 per square foot as of the date of value. "He advised me that it is accepted by real estate appraisers that smaller parcels generally sell at a greater per square foot value than larger parcels, that the March 2005 seller took back a very large part of the purchase price in the form of a promissory note, and that he could not confirm that the sale was at arms length, reflecting a true market transaction."

After reviewing the competing appraisals and considering Mr. Lidgard's explanation of his valuation, the Agency decided that "[i]n spite of Mr. Lidgard's well reasoned opinion, the sale right across the street at virtually the date of value was very significant and could not be ignored." It was the Agency's view that "no objective finder of fact would put a greater value on the Subject

Property than $42.68 psf since that was the price a property right across the street sold for at the date of value." The Agency authorized a final offer of $2.7 million, which is $43.24 per square foot based on the correct square footage of the subject property.

On appeal, the Moraleses challenge Mr. Anthony's explanation as to the Agency's process in reaching the $2.7 million final offer, speculating that the Agency merely averaged the two appraisals to reach that figure. This argument was not presented to the trial court, and it may be nothing more than pure coincidence that the result of averaging of the two appraisals is essentially the same as the calculation based on the price per square foot of the comparable sale across the street. There is nothing inherently unreasonable in averaging the appraisals, particularly where the Agency could conclude that its own appraiser may have excluded a comparable sale that would have yielded a higher appraisal and the Moraleses' appraiser had included sales that were in much better neighborhoods or were otherwise dissimilar to the subject property. In fact, according to the statement for legal services rendered by the Moraleses' counsel at the September 13, 2005 mandatory settlement conference in Department 59, "Judge recommends settlement half way between Redevelopment's $1,950,000 and our appraiser Reid's $3,400,000."

The court was required to evaluate the good faith and accuracy of the Agency in formulating its final offer. It was not called upon to evaluate the Agency's appraiser or his early appraisals, particularly where the Agency rejected his recommendation and independently formulated its final offer.

The trial court's factual determination under section 1250.410, when supported by the evidence, is entitled to a broad presumption of validity on appeal. (*Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1415 [23 Cal.Rptr.2d 14].) But in this case, the court mistakenly calculated the actual and percentage difference between the offer and the compensation awarded, and improperly focused on the conduct of the Agency's appraiser, rather than on the conduct of the Agency, in evaluating the Agency's good faith, care and accuracy in formulating its final offer. The presumption of validity is not appropriate where the basis for the court's factual determination is incorrect. We shall remand the matter so the court can exercise proper discretion.

## DISPOSITION

The order awarding litigation expenses is reversed and the cause remanded for reconsideration consistent with the views expressed in this opinion. Appellant is to have its costs on appeal.

Manella, J., and Suzukawa, J., concurred.

A petition for a rehearing was denied December 18, 2007, and the opinion was modified to read as printed above.